UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| NOBLE FOODS INC., d/b/a HAPPY EGG CO., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil No. 19-10324 |
| WOODLAND PARTNERS, INC., | ) ) ) | |
| Defendant. | ) ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 8)

July 8, 2019

SOROKIN, J.

Noble Foods Inc. ("Noble Foods") has sued Woodland Partners, Inc. ("Woodland") for breach of a contract involving the sale of eggs. Noble Foods alleges that it did not receive payment for multiple shipments of eggs to Woodland because of an email hack which convinced Woodland to deposit the money into a different bank account. Noble Foods now seeks to recover the money it would have received for those shipments of eggs. Woodland filed a motion to dismiss, which Noble Foods opposed. For the reasons set forth below, the motion to dismiss, Doc. No. 8, is ALLOWED IN PART and DENIED IN PART.

I.   FACTS

The facts are drawn from the allegations in the complaint, in accordance with the standard applicable to motions to dismiss.

Noble Foods is a nationwide supplier of organic and free-range eggs. Doc. No. 1 ¶ 5. In early 2017, Woodland began purchasing eggs from Noble Foods for distribution in supermarkets. Id. ¶ 6. At the commencement of the parties' relationship, Woodland required Noble Foods to

enter into an ACH Agreement which governed the payment system to be used for Woodland to purchase the eggs from Noble Foods. Id. The ACH Agreement specifies a bank account belonging to Noble Foods and authorizes Woodland to make deposits into that account for payment of invoices. Id. ¶ 10. The bank account specified is a Rabobank account in California. Id. Additionally, the ACH Agreement states that it will remain in effect until written notice of termination is provided and that Noble Foods shall provide such information "in the format requested by [Woodland]." Id. ¶ 12. Finally, the ACH Agreement contains a blank box which had to be checked if and when Noble Foods requested a change under the agreement, including the bank account used. Id. ¶ 13. From January 2017 until March 2018, Woodland paid all invoices to Noble Foods' Rabobank account. Id. ¶ 14.

On March 9, 2018, a Woodland employee, Michelle Hassan, received an email from "what appeared to be the e-mail account of Paul Mensing, a Noble Foods Senior Revenue Deductions Analyst." Id. ¶ 15. The email stated that the bank account Noble Foods had been using had "been placed on hold due to a dud check" and purported to attach Noble Foods' "newly updated company bank account info for receiving payments via ACH." Id. Three days later, Ms. Hassan responded to the email noting that the bank account information had not actually been attached and asked for Noble Foods to complete a new ACH Agreement, which she attached to her email. Id. ¶ 16.

The same day, Ms. Hassan received a response in the form of a letter which provided new ACH instructions, rather than a completed version of the ACH Agreement she had sent. Id. ¶¶ 17-18. These new instructions directed Woodland to make all future payments into a Suntrust Bank in Florida. Id. ¶ 18. Additionally, Noble Foods' address was printed incorrectly on this letter; most notably, the address listed the city as "Francisco," rather than "San Francisco." Id.

At least one additional typographical error appeared in the letter and the letter was not personally addressed or signed. Id. Woodland neither required Noble Foods to complete a new ACH Agreement nor followed up with a telephone call to determine whether the requested bank account change was in fact authorized. Id. ¶ 19.

Thereafter, between March 14, 2018 and May 22, 2018, Woodland made nine payments totaling $972,521.35 into the Suntrust Bank account. Id. ¶ 20. "Noble Foods discovered the fraud after contacting Woodland about its delinquent account." Id. ¶ 21. To date, Woodland has not paid Noble Foods any of the $972,521.35. Id. ¶ 23.

Noble Foods brought a three-count complaint alleging breach of contract (Count I), negligence in the performance of the contract (Count II), and unjust enrichment (Count III). Woodland moved to dismiss all three counts for failure to state a claim. Doc. No. 8. Noble Foods opposed. Doc. No. 17. The Court heard arguments from the parties on June 27, 2019.

II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating a complaint, the court must accept all factual allegations in the complaint as true and construe all reasonable inferences in the plaintiff's favor. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). A complaint must be dismissed for failure to state a claim when it lacks "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997).

III. DISCUSSION

    A.    FBI Affidavit

Woodland asks the Court to consider an affidavit submitted in a related forfeiture action by an FBI agent who is involved in the ongoing investigation into the hack of Noble Foods' system. Doc. No. 9 at 3 n.1. Noble Foods objects to the Court's consideration of the FBI affidavit on the motion to dismiss. Doc. No. 17 at 5. Accordingly, the Court first resolves the question of whether the affidavit is appropriate to consider at this stage.

When a document is "not attached to the complaint nor expressly incorporated by it," consideration of the document is "normally forbidden in the context of a motion to dismiss unless the proceeding [is] properly converted into one for summary judgment under Rule 56." Flores v. OneWest Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018) (citing Fed. R. Civ. P. 12(b)(6)). However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3.

Woodland argues that the FBI affidavit is incorporated by reference into the complaint and that it is an "official public record of unquestionable authenticity." Doc. No. 9 at 3 n.1. There is no mention of the FBI affidavit in the complaint; indeed, the only mentions of the FBI investigation appear in paragraph 22 and footnote 1, which simply state that there is an ongoing FBI investigation and that some money is in the process of being recovered. Doc. No. 1 ¶¶ 22-23. Such level of generality is not sufficient to incorporate all documents pertaining to the FBI investigation into the complaint by reference, and accordingly, Woodland's first argument fails.

Woodland's second argument also fails because although the filing of the affidavit is susceptible to judicial notice, the statements contained therein (which Woodland asks the Court

4

to take as fact) are not. The Court is certainly free to take judicial notice of the fact that an affidavit was filed by an FBI agent in another pending judicial action, but it does not find it appropriate in this case to consider the factual assertions made therein on the motion to dismiss. See F.D.I.C. v. O'Flahaven, 857 F. Supp. 154, 157 (D.N.H. 1994) ("[E]ven if judicial notice were justified, its scope is far more limited that the parties appear to appreciate. The Court could not judicially notice the veracity of the allegations in the affidavits; it could only take notice that the affidavits were in fact filed and that the factual averments were in fact made.").

Even if it did consider the FBI affidavit, the Court does not read the statements which Woodland points to as "dispositive" of the motion to dismiss to have such weight. The statements Woodland relies upon involve the timing of when Noble Foods found out its email system had been hacked. While the timing of Noble Foods' knowledge of the hack may be relevant in the ultimate adjudication of this dispute, it does not compel dismissal of the claims at this stage. Accordingly, the Court declines to take judicial notice of the FBI affidavit and does not consider its contents in resolving the motion to dismiss.

B.  Contract Claim

Count I alleges that Woodland breached the parties' contract by failing to provide payment for eggs it received from Noble Foods. Doc. No. 1 ¶¶ 24-29. Additionally, Count I alleges that Woodland breached the ACH Agreement "because it made changes to Noble Foods' ACH instructions without following through on Woodland's request that Noble Foods complete and sign a new ACH Agreement." Id. ¶ 28.

To establish a breach of contract claim in Massachusetts, "the plaintiff must prove by a preponderance that an agreement existed, the agreement was breached, and the breach caused the plaintiff to suffer damages." Gemini Inv'rs Inc. v. AmeriPark, Inc., 643 F.3d 43, 48 (1st Cir.

2011).  In this case, neither party disputes the existence of an enforceable contract or the fact that such a contract was breached.  See Doc. No. 22 at 6 n.2.  Woodland moves to dismiss the breach of contract claim only on two grounds: "(1) that its contractual non-performance is 'justified'; and (2) Noble Foods has not alleged facts to establish but-for causation."

As to Woodland's second argument, "[t]he causation element generally requires the plaintiff to prove that but for the defendant's breach the plaintiff would have realized some gain or avoided some loss."  Gemini Inv'rs Inc., 643 F.3d at 48.  Noble Foods has undoubtedly alleged sufficient facts which, accepted as true for purposes of the motion to dismiss, establish that but for Woodland's failure to follow the parties' agreement regarding changing the ACH Agreement, Woodland would have continued to send the money to Noble Foods' actual bank account and thus, Noble Foods would have suffered no loss.

In support of its first argument, Woodland cites to a Massachusetts Supreme Judicial Court ("SJC") case which notes that "non-performance of a contract, if justified, is not a breach." Realty Developing Co. v. Wakefield Ready-Mixed Concrete Co., 100 N.E.2d 28, 30 (Mass. 1951).  However, as Noble Foods notes in its opposition, in that case, the SJC affirmed a jury verdict, holding that "[t]he jury could have found that the defendant's conduct . . . was not wrongful or lacking in legal excuse," in which case "there was no breach by the defendant."  Id. at 31.  The question of justification in this case is not appropriate for resolution at the motion to dismiss stage.  Noble Foods has pled sufficient facts, accepted as true, to establish that Woodland's failure to follow the terms of the contract were not justified.  Whether this position will ultimately prevail in whole or in part will be decided at a later stage of this case.

Accordingly, the motion to dismiss is DENIED as to Count I.

C. Negligence Claim

Count II alleges negligence in the performance of the contract. Doc. No. 1 ¶¶ 30-33. Woodland argues that the economic loss doctrine prohibits this claim because it is a tort claim alleging only economic harm. Doc. No. 9 at 9. However, "Massachusetts courts have upheld tort claims to recover economic losses from negligent breach of contractual duties." Arthur D. Little Int'l, Inc. v. Dooyang Corp., 928 F. Supp. 1189, 1203 (D. Mass. 1996) (citing Abrams v. Factory Mutual Liability Ins. Co., 10 N.E.2d 82 (Mass. 1937)). When "the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort." Anderson v. Fox Hill Vill. Homeowners Corp., 676 N.E.2d 821, 823 (Mass. 1997). "However, failure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made." Id.

In order to succeed on a claim for negligent performance (also sometimes called negligent breach), a plaintiff must demonstrate that the defendant had an "obligation[] imposed apart from and independent of promises made and therefore apart from any manifested intention of [the] parties to a contract or other bargaining transaction." Id. "Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the only theory upon which liability would be imposed." Id. (citing W. Prosser & W. Keeton, Torts § 92, at 656 (5th ed.1984)). In essence, the plaintiff must identify an "extra-contractual duty" which the defendant bore. Bargantine v. Mechanics Co-op. Bank, No. CIV.A. 13-11132-NMG, 2013 WL 6211845, at *7 (D. Mass. Nov. 26, 2013).

In this case, Noble argues that "the ACH Agreement creates a duty of care apart from the successive purchase orders." Doc. No. 17 at 10. However, that is not an extra-contractual duty; in fact, the ACH Agreement itself is a contractual agreement. Noble has pointed to no general duty under Massachusetts law imposed on a purchaser of goods in the absence of a contractual relationship which would be applicable in this case. Because Woodland's obligations to follow the terms of the ACH Agreement and the various purchase orders "could not have existed but for a manifested intent, [] contract law should be the only theory upon which liability would be imposed." Anderson, 676 N.E.2d at 823.

Accordingly, the motion to dismiss is ALLOWED as to Count II.

D.  Unjust Enrichment Claim

Count III alleges that Woodland was unjustly enriched by Noble Foods' delivery of the eggs and the subsequent sales of those eggs to third parties. Doc. No. 1 ¶¶ 34-40. Woodland seeks to dismiss Count III on the grounds that Noble Foods cannot plead both a claim sounding in law and a claim sounding in equity. "Although . . . damages for breach of contract and unjust enrichment are mutually exclusive, it is accepted practice to pursue both theories at the pleading stage." Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012). Noble Foods is permitted to plead both theories of recovery, and thus, this is not a basis to dismiss Count III.

Additionally, Woodland argues that Noble Foods has not stated a claim for relief under Count III. "A plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, a quality that turns on the reasonable expectations of the parties." Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 850 (Mass. 2013). Essentially, the question is whether "acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."

Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., 140 F. Supp. 3d 138, 141 (D. Mass. 2015).  Such an argument would require the Court to weigh the relative expectations and equities of each party, as well as all relevant circumstances, a task not appropriate at the motion to dismiss stage.

Accordingly, the motion to dismiss is DENIED as to Count III.

IV. CONCLUSION

The motion to dismiss, Doc. No. 8, is DENIED on Counts I and III; it is ALLOWED on Count II.

                                                             SO ORDERED.

                                          /s/ Leo T. Sorokin
                                          Leo T. Sorokin
                                          United States District Judge